**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| BRUCE WILLIAMS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 07 C 2468 |
| ) | |
| CITY OF CHICAGO, ) | Judge Rebecca R. Pallmeyer |
| A Municipal Corporation; and ) | |
| Chicago Police Officers ) | |
| ROBERT KELLER, Star 6451; ) | |
| DANIEL SMITH, Star 19200; ) | |
| COOK COUNTY; ) | |
| THOMAS DART, Cook County Sheriff; ) | |
| and Correctional Officer CHAD ) | |
| BRUNTJENS, Star 8672, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

This suit arises out of a traffic stop, vehicle search, and arrest that occurred on April 29, 2006. Plaintiff Bruce Williams has sued Chicago Police Officers Robert Keller and Daniel Smith and the City of Chicago on three counts,[1] alleging that the officers illegally searched his person and vehicle. Defendants have moved for summary judgment. For the reasons given below, Defendants' motion is granted in part and denied in part.

## FACTUAL BACKGROUND

Around 2:40 p.m. on April 29, 2006, Plaintiff was driving his 1990 Toyota Camry on West Greenleaf in Chicago. (Defs.' Amended 56.1 Statement of Facts (hereinafter "Defs.' 56.1") ¶ 2; Arrest Report, Ex. D to Defs.' 56.1.) Officers Keller and Smith stopped Plaintiff, who was alone in the car, after noticing his taillights were not working properly. (Defs. 56.1 ¶ 11.) Officer Keller, who had been driving the squad car, walked to the driver's side of Plaintiff's car, while Officer Smith

---

[1] Plaintiff has brought three additional claims against three other defendants, but neither those claims nor those defendants are before the court on this motion.

walked to the passenger's side. (*Id.*)

At this point, the parties' versions of the facts diverge. According to Plaintiff, when Officer Keller reached Plaintiff's car window, he "immediately" asked Plaintiff to step out of the car. (Pl.'s 56.1 Statement of Facts (hereinafter "Pl.'s 56.1) ¶ 7.) Keller then asked for Plaintiff's driver's license and proof of insurance, which Plaintiff provided. (*Id.* ¶¶ 8, 9.) Plaintiff asserts that Officer Keller then ordered him to the rear of his vehicle and directed him to empty his pockets onto the trunk. (*Id.* ¶ 10.) After Plaintiff complied with this request, Keller handcuffed Plaintiff and searched his person. (*Id.* ¶¶ 11-13.) Keller came across Plaintiff's contact lens case, which contained two Viagra pills.[2] (*Id.* ¶ 15.) When Officer Keller asked Plaintiff what the pills were, Plaintiff responded that the pills were Viagra and that he had a prescription, but that he did not need to carry around a whole bottle. (*Id.* ¶¶ 16, 17.)

In the meantime, according to Plaintiff, Officer Smith had entered Plaintiff's car and was searching the inside. (*Id.* ¶ 18.) The interior of the car was messy because Plaintiff kept "a lot of stuff" in the car. (*Id.*) According to Plaintiff, the bullets inside the car were concealed beneath all of the clutter and were not readily visible. (*Id.* ¶ 20.) Nonetheless, Smith found the bullets during the search of the car, after Plaintiff was already handcuffed. (*Id.* ¶¶ 19, 21.) Plaintiff was charged with "felony possession of a controlled substance, possession of ammunition without a valid [firearm owners identification ("FOID")] card, and driving an unsafe vehicle." (*Id.* ¶ 22.)

Officers Keller and Smith tell a different story. Defendants claim that Officer Keller asked Plaintiff for a driver's license and proof of insurance while Plaintiff remained in the car. (Defs.' 56.1 ¶ 12.) At the same time, Officer Smith approached the car from the passenger's side and saw, as he walked by, a box lying on the floor of the car. (*Id.* ¶ 13.) He recognized the name brand on the

---

[2] Plaintiff asserts that Officer Keller removed the contact lens case from Plaintiff's pocket while he was handcuffed. (Pl.'s 56.1 ¶ 15; *see also* Pl.'s Aff. 15, Ex. 2 to Pl.'s 56.1.) Defendant claims, however, that Plaintiff himself removed the case and put it on the trunk. (Defs.' Resp. to Pl.'s 56.1 ¶ 15; *see also* Williams Dep. 84:21-85:3, Ex. 3 to Pl.'s 56.1.)

2

box as that of an ammunition company.  (*Id.* ¶ 14.)  Smith then signaled to Keller to direct Plaintiff to exit the vehicle.  (*Id.* ¶ 16.)  Keller told Plaintiff to exit the car, escorted him to the rear, and then told Plaintiff to place his hands on the trunk.  (*Id.* ¶ 17.)  Smith removed the box of ammunition–which contained thirty-two live rounds of 9 mm bullets–and showed them to Plaintiff at the rear of the car.  (*Id.* ¶ 18.)  After Plaintiff stated that he did not know who owned the bullets, did not own a gun, and did not have a FOID card, Keller handcuffed Plaintiff and placed him in custody.  (*Id.* ¶¶ 19-28.)  At this time, Smith searched Plaintiff's vehicle, but recovered nothing else.  (*Id.* ¶¶ 29, 30.)  Keller then conducted a custodial search of plaintiff's person at the scene of the arrest, and found two pills in a contact lens case.  (*Id.* ¶ 31, 32.)  Officer Keller inquired as to the pills, and Plaintiff responded that they were Viagra, that he had a prescription but not with him, and that he could confirm the prescription by calling his pharmacy.  (*Id.* ¶¶ 33-37.)

Plaintiff was arrested and charged with Possession of a Controlled Substance, 720 ILCS 570/420(c), and Possession of Ammunition Without a FOID, 430 ILCS 65/2(a)(2).  (*Id.* ¶ 46.)  He was also issued a citation for Operating an Unsafe Vehicle, in violation of the Chicago Municipal Code § 9-40-170.  (*Id.*)  On May 17, 2006, less than three weeks after the arrest, the criminal charges against Plaintiff were dismissed.  (*Id.* ¶ 47.)

## **DISCUSSION**

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).  When considering a summary judgment motion, the court construes the facts and draws reasonable inferences in the light most favorable to the nonmoving party.  *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004).

Plaintiff asserts that Officers Smith and Keller conducted warrantless searches of his person and vehicle, both of which were unjustified by any exception to the warrant requirement. The court

grants Defendants' motion for summary judgment as to Count I, the unlawful search of Plaintiff's person, because the search occurred after Plaintiff had been placed in custodial arrest. The court denies summary judgment as to Officer Smith for Count II, the unlawful search of Plaintiff's vehicle, primarily because it is unclear when the search took place, and it is properly disputed that Officer Smith saw the ammunition in plain view. Because Count II survives, Plaintiff's Count III indemnification claim survives as well.

**Count I – Illegal Search of Plaintiff's Person**

Defendants argue that the search of Plaintiff's person is justified because the broken taillights gave the officers probable cause to arrest Plaintiff and search his person. A search incident to a valid arrest is permissible without a search warrant, even if the arrest is for a minor traffic violation. *See United States v. Robinson*, 414 U.S. 218, 235 (1973) ("all custodial arrests [are] alike for purposes of search justification"). The proper question here, then, is whether the defendants made a valid arrest.

Plaintiff argues that he was not in fact subjected to a custodial arrest at the time his person was searched (Pl.'s Mem. In Resp. To Defs.' Mot. For Summ. J. (hereinafter "Pl.'s Mem.") at 2), but his own version of events defeats this contention. "A suspect is under custodial arrest when 'a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest.'" *Ochana v. Flores*, 347 F.3d 266, 270 (7th Cir. 2003) (quoting *United States v. Ienco*, 182 F.3d 517, 523 (7th Cir.1999)). Although the parties dispute the timing of the events here, they agree that, when Plaintiff's person was searched, he had already been ordered out of the vehicle, escorted to the rear, and handcuffed. A reasonable person who had left his car and been handcuffed would not have thought that he was free to leave. Furthermore, drivers may be properly arrested for traffic violations such as the one committed by Plaintiff. *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) (upholding validity of arrest of a driver who was driving without a license, without valid

4

insurance, and without seatbelts fastened on herself or her children). Thus, at the time Plaintiff was searched, he had been validly arrested.

Plaintiff's argument is limited to asserting that he was not actually arrested and the search was overly broad for a traffic stop. The court notes that he has not suggested that the search was improper even if the arrest is valid. ³ The court therefore declines to address whether this search, which was clearly incident to a valid arrest, was nevertheless unreasonable. *See Atwater*, 532 U.S. at 354; *United States v. Garcia*, 418 F.3d 648, 650 (7th Cir. 2004.). Summary judgment is granted on Count I.

**Count II – Illegal Search of Plaintiff's Vehicle**

Plaintiff's second count claims that the warrantless search of his car was unlawful. The officers present several theories to argue that the search was permitted by various exceptions to the warrant requirement. First, Defendants contend that the search was lawful because the ammunition was in "plain view." *See Harris v. United States*, 390 U.S. 234, 236 (1968). Generally, incriminating objects in a lawfully positioned officer's plain view are subject to seizure. *See U.S. v. Williams*, 495 F.3d 810, 815 (7th Cir. 2007) (citing *Texas v. Brown*, 460 U.S. 730, 740 (1983)).

---

³ Plaintiff makes a different point when he argues that "a traffic stop must be limited to the purpose for which the stop was made" (Pl.'s Mem. at 2), and furthermore, the three cases he cites do not support this general proposition. In *Illinois v. Caballes*, 543 U.S. 405 (2005), the Court upheld the constitutionality of a search performed by a narcotics-sniffing dog during a concededly lawful traffic stop. This case actually cuts against Plaintiff, as it upholds the reasonableness of a search made pursuant to an ordinary traffic stop. Likewise, *United States v. Muriel*, 418 F.3d 720 (7th Cir. 2005) is also unhelpful for Plaintiff. *Muriel* upheld the reasonableness of a search, which resulted in the police finding cocaine in the back seat of the car, conducted after a lengthy seizure of the defendant during a traffic stop. *Id.* at 725. Finally, Plaintiff points to dicta in *United States v. Garcia*, 376 F.3d 648, 650 (7th Cir. 2004) which states that the "police may not conduct full searches of drivers, passengers, and vehicles in all routine traffic stops." Despite this language, *Garcia* upheld the search and seizure of the defendant in that case who was pulled over and ultimately arrested for driving under the influence of alochol. *Id.* at 651. Plaintiff's cited authority therefore does not support his claim that the police must limit the traffic stop to the purpose for which the stop was made.

Here, however, Smith's ability to observe the ammunition in plain view is properly disputed, and a genuine issue of material fact exists which precludes summary judgment.

Contrary to Smith's assertions, Plaintiff claims that "[t]he bullets were concealed. They were not in plain view on the floor." (Pl.'s Aff. ¶ 20, Ex. 2 to Pl.'s 56.1.) Additional evidence, other than Plaintiff's own affidavit, suggests that the car was "messy"–Smith himself said that calling the car "messy" was being "nice about it." (Smith Dep. 16:7-12, Ex. 5 to Pl.'s 56.1.) Although Smith claims that only the backseat was messy and not the floorboard, (Smith Dep. 14:13-17, Ex. 5 to Pl.'s 56.1), Plaintiff's recollection of the floor differs. Defendants further claim that Plaintiff cannot testify as to whether Smith saw the box in plain view or not. While this is in some sense true, as Plaintiff cannot know what Smith saw, Plaintiff can nevertheless testify as to the messiness of his car and the fact that the box was so concealed by other items as to make it impossible for someone walking by the car to notice; it is then for the fact finder to determine the weight to be accorded the differing accounts.[4] By swearing that the bullets were "concealed" by Plaintiff's belongings and citing to evidence that indicates Plaintiff the car was very messy, Plaintiff has created a genuine issue as to whether the bullets were in plain view.

Defendants also try to justify the search based on several other exceptions to the warrant requirement. First, Defendants claim that the "police [can] search the passenger area of a car

---

[4] Defendants also argue that Plaintiffs' statements are insufficient because "self-serving affidavits, without any factual support in the record, are insufficient to defeat a motion for summary judgment." *Palmer v. Marion County*, 327 F.3d 588, 596 (7th Cir. 2003). Plaintiffs' affidavit may be self-serving, but it is competent evidence because it is based on his own knowledge of the state of his car at the time of the search. *See Dalton v. Battaglia*, 402 F.3d 729, 735 (7th Cir. 2005). "Sworn affidavits, particularly those that are detailed, specific, and based on personal knowledge are 'competent evidence to rebut [a] motion for summary judgment.'" *Kaba v. Stepp*, 458 F.3d 678, 681 (7th Cir. 2006) (quoting *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir.2004) (per curiam)).

Defendants' evidence consists solely of sworn affidavits and deposition testimony as well, and there is no reason why Defendants' "self-serving affidavits" should be considered by the court and Plaintiff's should not.

following the lawful arrest of a person occupying the car."[5] (Def.'s Mem. in Supp. at 10.) Second, Defendants claim that the search is justified as an inventory search of an automobile pursuant to Plaintiff's arrest for the possession of Viagra without a prescription. *See United States v. Jensen*, 169 F.3d 1044, 1048 (7th Cir. 1999.) Defendants further attempt to justify the search of the car as a "protective search of the passenger compartment." *Michigan v. Long*, 463 U.S. 1032, 1035 (1983). In *Long*, the court held that a car's interior may be searched if the search is limited to "areas in which a weapon may be placed or hidden," the searching officer has a reasonable belief that suspect is dangerous and "may gain immediate control of weapons," and that belief is based on "specific and articulable facts." *Id.* at 1049. Finally, Defendants claim that the search is justified under the "automobile exception," which allows police to conduct a warrantless search of a car when there is "probable cause to believe that the search will uncover contraband or evidence of crime." *United States v. Pittman*, 411 F.3d 813, 817 (7th Cir. 2005) (citing *Maryland v. Dyson*, 517 U.S. 465, 466-67 (1999)); *see also United States v. Ross*, 456 U.S. 798, 809 (1982).

These theories all suffer from the same defects: they each require either that the search occur during or after the arrest, or that the search be precipitated by some probable cause of wrongdoing or officer safety. Both of these points are legitimately disputed. According to Defendants, Plaintiff was not yet subject to a custodial arrest when Smith entered the backseat and took the ammunition, and so the search could not have occurred after the arrest. Defendants claim that Smith's entry was legitimate under the plain view doctrine, but as established above, a genuine issue exists as to whether the bullets were in fact in plain view. Because Officer Smith's ability to see the ammunition in plain view is properly contested by Plaintiff, a genuine issue exists

---

[5] Defendants cite *Florida v. Thomas,* 532 U.S. 774 (2001) for this proposition, but the Court in that case was not able to reach the Fourth Amendment question because of a jurisdictional problem. Defendants likely meant to cite *New York v. Belton*, 453 U.S. 454, 460 (1981), in which the Supreme Court held that an officer may search a car's passenger compartment as a "contemporaneous incident" to the arrest of the car's occupant. *See also U.S. v. Arango,* 879 F.2d 1501, 1504 (7th Cir.1989).

7

concerning whether the initial entry into the car was a warrantless search that occurred before Plaintiff was arrested. Therefore, none of these exceptions to the warrant rule justify summary judgment.

Finally, Defendants claim that, even if the search of Plaintiff's car was illegal, they are shielded by qualified immunity. The Supreme Court has established a two-part test for qualified immunity: "(1) whether the facts, taken in the light most favorable to the plaintiff, show that the defendant violated a constitutional right; and (2) whether that constitutional right was clearly established at the time of the alleged violation." *Wheeler v. Lawson,* 539 F.3d 629, 639 (7th Cir. 2008) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Though Defendants must raise qualified immunity as an affirmative defense, Plaintiff bears the burden to defeat it. *Id.* Because the court has determined that Plaintiff alleges an unconstitutional search of his vehicle when the facts are taken "in the light most favorable" to him, the court shall focus on the second prong of the *Saucier* test: whether Defendants acted reasonably in conducting a warrantless search of Plaintiff's car.

The conduct at issue here is the search of Plaintiff's car that uncovered the bullets. Taking the evidence in the light most favorable to the Plaintiff, this was a search that was not conducted pursuant to the plain view doctrine, but was rather performed by an officer who began looking through the car prior to Plaintiff's arrest. This search allegedly took place before evidence of either the ammunition or the prescription medicine was found, at a time when Plaintiff had only been pulled over for driving without properly operating taillights. The search then, viewed in the light most favorable to Plaintiff, was made without probable cause to suspect that Plaintiff possessed contraband or other evidence of criminal activity. This alleged behavior violates Plaintiff's "clearly established" rights. *See, e.g.*, *Ross*, 456 U.S. at 799 (warrantless search of an automobile requires probable cause to believe it contains contraband) (citing *Carroll v. United States*, 267 U.S. 132 (1925)); *United States v. Hines*, 449 F.3d 808, 814 (7th Cir. 2006) (same). Defendants appear to argue that the search that occurred *after* Plaintiff was arrested was a search justified by the

inventory search exception to the warrant requirement. (Defs.' Mem. in Supp. at 13-14.) The real question here, however, is whether the initial search of Plaintiff's car which allegedly took place *before* Plaintiff was arrested was justified; for the reasons stated above, there are disputes of fact concerning whether the conduct was justified under clearly established law. Accordingly, Defendants are not entitled to summary judgment on the ground of qualified immunity.

The court therefore denies summary judgment on Count II as to Officer Smith. As Plaintiff has offers no evidence that Officer Keller violated Plaintiff's constitutional rights when Smith searched Plaintiff's vehicle, however, the court grants summary judgment as to Keller.

**Count III – City of Chicago Indemnification**

Count III is an indemnification claim against the City of Chicago pursuant to the Illinois Tort Immunity Act, 745 ILCS 10/9-102. The court presumes the City would be liable to indemnify Defendant Smith if the Plaintiff prevails on Count II. Having denied summary judgment on Count II as to Defendant Smith, the court denies summary judgment on Count III as well.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment [57] is granted with respect to Count I and with respect to Defendant Keller for Count II. Summary judgment is otherwise denied.

ENTER:

Dated: September 29, 2008

_____
REBECCA R. PALLMEYER
United States District Judge